UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JONATHAN NETTLES,

        *Plaintiff,*

v.

TAMMY BRUNO,
MELISSA JOHNSON,
MICHIGAN DEPARTMENT OF
HEALTH AND HUMAN SERVICES/CPS,

        *Defendants.*
_____/

CASE NO. 1:22-cv-10535
DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

For the following reasons, I **RECOMMEND** that pursuant to 28 U.S.C. § 1915(e)(2), the Court *sua sponte* **DISMISS** Plaintiff's complaint **IN PART**.

If this Report is adopted, the Court would: (1) dismiss all claims against the Michigan Department of Health and Human Services/CPS; (2) dismiss all official capacity claims against Tammy Bruno and Melissa Johnson; (3) dismiss all equal protection claims against any defendant; and (4) dismiss Nettles' *Franks*, false arrest, and malicious prosecution claims except to the extent that these claims are premised on a civil conspiracy.

**II.    REPORT**

    **A.    BACKGROUND**

Jonathon Nettles was prosecuted in a Michigan court after police discovered a photograph of him sexually assaulting his daughter on a CD recovered from Nettles' home. (ECF No. 1,

1

PageID.5.)  Shortly after police discovered this photograph, Child Protective Services ("CPS") successfully petitioned a court to terminate Nettles parental rights over all five of his children. (*Id.*)  However, Nettles alleges that police doctored the image, and he now sues the two CPS officials involved in his case, claiming they knew that police had falsified the image.  (*Id.* at PageID.2–3, 5.)

Nettles alleges that three Bridgeport Township police officers broke into his home through a window, drew their firearms on him, and handcuffed him after "forc[ing] him to the ground."  (*Id.* at PageID.5.)  Once Nettles had been handcuffed, one of the officers, Sergeant Skabardis, choked him with both hands while the other two officers pinned him down.  (*Id.*) Nettles spent the next three days in jail before he was eventually released.  (*Id.*)

About two weeks after Nettles' arrest, his wife filed for divorce, and just a day later, she accused him of sexually abusing his daughter.  (*Id.*)  Initially, officials in Michigan's CPS program declined "to prosecute the case" because they lacked "credible evidence" of child abuse. (*Id.*)  However, in December 2018, Tammy Bruno took over as the supervisor of Nettles' child abuse case and continued the investigation "simply because the Bridgeport Township Police wanted her to." (*Id.*)

Bruno and another official in the CPS program, Melissa Johnson, interviewed Nettles the following month.  (*Id.*)  At this time, the Michigan State Police were searching "multiple CDs, DVDs, and other media," belonging to Nettles.  (*Id.*)  Although the search had not yet uncovered any evidence of child abuse, Bruno told Nettles that the state police had uncovered a photograph of Nettles' daughter with his penis in her mouth.  (*Id.*)

On the same day as the interview, Bruno and Johnson filed a petition to terminate Nettles' parental rights to his five children. (*Id.*) In their petition, Bruno and Johnson "lied" that police had uncovered a photograph of Nettles abusing his daughter. (*Id.*) They also withheld a statement from Nettles' daughter that she had never been abused by her father, and according to Nettles, they also "lied about how [Nettles] was removed from [his] home." (*Id.*) However, Nettles admits in his complaint that he was removed from his home by Skabardis and he does not explain how Johnson and Bruno "lied" about this event. (*Id.*)

Over a week after Bruno and Johnson filed their petition, the state police finished their three-month search through Nettles' CDs, DVDs, and "other media," but found "nothing criminal" on any of the seized items. (*Id.*) The state police officer returned the items to Skabardis; however, Skabardis sent one of the CDs back to the state police with a fabricated image of Nettles sexually abusing his daughter. (*Id.*)

Relying primarily on this alleged fake image, Bruno and Johnson convinced a Juvenile Court to terminate Nettles' parental rights at a hearing in April 2019. (*Id.*) At the hearing, Bruno and Johnson failed to mention any exculpatory evidence and "ignored" Skabardis' constitutional violations. (*Id.*)

The State of Michigan prosecuted Nettles, but a jury eventually acquitted him of all charges. (*Id.*) After the state released Nettles from jail, he filed this complaint, *in forma pauperis*, bringing several claims under 42 U.S.C. § 1983 (2012) against Bruno, Johnson, and the Michigan Department of Health and Human Services ("MDHHS"), the State entity that operates the CPS program. (*Id.* at PageID.2–3.) Specifically, Nettles brings Fourth Amendment claims for false arrest, malicious prosecution, and violations of *Franks v. Delaware*. (*Id.* at

3

PageID.3.) Nettles also alleges that the Defendants violated his rights to Due Process and Equal Protection under the Fourteenth Amendment. Nettles sues each Defendant in both their individual and official capacities, and he requests only monetary damages. (*Id.*)

### B. LEGAL STANDARD

Plaintiff proceeds IFP, subjecting his claim to the screening standards in 28 U.S.C. § 1915(e)(2)(B) (2012). Since 1892, federal courts have possessed statutory power to permit civil actions IFP. *See Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016). This power ensures that indigent individuals have equal access to the judicial system by allowing them to proceed without advancing the litigation fees and costs. *Flint v. Haynes*, 651 F.2d 970, 972 (4th Cir. 1981).

However, Congress recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To counteract these incentives, Congress crafted a screening procedure that requires the court to *sua sponte* review the complaints of all plaintiffs proceeding IFP and dismiss any before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

4

When considering whether a complaint states a claim, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). Still, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. (citations omitted). The complaint must include more than "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Id.*

As noted, the IFP statute also requires federal courts to screen frivolous claims. The Supreme Court has established that "a complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).[1] A complaint is also frivolous and can be dismissed if it provides no basis for federal jurisdiction. *Carlock v. Williams*, 182 F.3d 916, 1999 WL 454880, at *2 (6th Cir. 1999) ("Since there is no basis for federal jurisdiction apparent on the face of Carlock's complaint . . . the district court properly dismissed the action as frivolous and for lack of subject matter jurisdiction."); *Humphries v. Various Fed. USINS Employees*, 164 F.3d 936, 941 (5th Cir. 1999) (citing caselaw for the proposition that a complaint is frivolous and can be dismissed on screening if the subject matter

---

[1] The Court also held that the frivolousness analysis differed from the "failure to state a claim" analysis—a complaint might not be frivolous because it raises an arguable question of law but still fail to state a claim. *Id.* When *Neitzke* was decided, the statute allowed screening of frivolous or malicious claims, but had not yet been amended to permit screening for failure to state a claim. 28 U.S.C. § 1915(d). That amendment came in 1996. *See* Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, Title VIII, § 804, 110 Stat. 1321 (April 26, 1996).

5

is outside the court's jurisdiction); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

C. ANALYSIS

1. **Sovereign Immunity**

The Eleventh Amendment to the United States Constitution provides that no citizen of the United States shall commence a suit against any state. U.S. Const. amend. XI.; *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). This protection extends to all "agencies or departments" of a state, including the MDHHS.[2] *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017); *see also Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 413 (6th Cir. 2019) ("Plaintiffs cannot seek damages from MDHHS . . . .").

The Eleventh Amendment also protects state officers when sued in their official capacity. *Boler*, 865 F.3d at 409. Indeed, it is well established that a suit against a state official in his or her official capacity is a suit against the entity the officer represents. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Bruno and Johnson are employees of the MDHHS, and by extension, the State of Michigan; therefore, by suing these Defendants in their official capacities, Plaintiff is effectively suing the State of Michigan. (ECF No. 1, PageID.2–3); *cf. Carpenter Jenkins v. Scotta*, No. 1:17-cv-11781, 2019 WL 5680344, at *11–12 (E.D. Mich. Aug. 20, 2019) (holding that MDHHS employees were immune from suit in their official capacities), *report and*

---

[2] In his complaint, Nettles lists the MDHHS as "Michigan Department of Health and Human Services/CPS." (ECF No. 1, PageID.3.) To the extent that Nettles intends to bring claims against CPS as a separate Defendant, I suggest that the claims fail as well because CPS is not an entity capable of being sued—it is simply a program run by the MDHHS. Mich. Dep't of Health & Hum. Servs., *Child Protective Services*, Michigan.gov, https://www.michigan.gov/mdhhs/0,5885,7-339-73971_7119_50648---,00.html (last visited Mar. 23, 2022); *cf. Wriston v. W. Va. Dep't of Health & Hum. Servs.*, No. 2:20-cv-00614, 2021 WL 4150709, at *3 n.1 (S.D. W. Va. Sept. 13, 2021); *Johnson v. State of La.*, No. 06-0894, 2007 WL 490152, at *1 (E.D. La. Feb. 12, 2007).

*recommendation adopted by Carpenter Jenkins v. Scotta*, No. 1:17-cv-11781, 2019 WL 4686474 (2019).

Accordingly, I suggest that because Nettles only requests monetary damages, Eleventh Amendment immunity precludes all of Nettles' claims against the MDHHS and all of Nettles' official capacity claims against Bruno and Johnson. (ECF No. 7, PageID.21); *see Ex parte Young*, 209 U.S. 123, 148 (1908) (holding that the Eleventh Amendment does not prohibit suits against states for injunctive relief); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (holding that sovereign immunity is a jurisdictional issue); *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 836 (6th Cir. 1997) ("It is well established that § 1983 does not abrogate the Eleventh Amendment and that Michigan has not consented to the filing of civil rights suits against it in federal court.").

### 2. Absolute Immunity

Social workers, like prosecutors, are entitled to absolute immunity from suit for any action taken within the scope of their duties. *Cunningham v. Dep't of Children's Servs.*, 842 F. App'x 959, 967 (6th Cir. 2021) (citing *Pittman v. Cuyahoga Cty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 725 (6th Cir. 2011)). Even conduct that is "malicious[]" or "corrupt[]" is protected by this doctrine. *Dean v. Byerley*, 354 F.3d 540, 554 (6th Cir. 2004). But this protection is not without limits—social workers only receive immunity for conduct that is "intimately associated with the judicial phase of the criminal process." *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 694 (6th Cir. 2013) (internal quotation marks omitted) (quoting *Dean v. Byerley*, 354 F.3d 540, 554 (6th Cir. 2004)). Or in other words, only conduct comparable to that of a "legal advocate[]," such as "initiating court actions or testifying under oath," are

7

protected. *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000). However, social workers are not entitled to absolute immunity when "performing administrative" or "investigative" functions. *Id.*

Here, much of the conduct Nettles takes issue with falls under Bruno and Johnson's roles as advocates. Their testimony, their decision to exclude exculpatory information from their petition, and their decision to initiate court proceedings are all protected by absolute immunity. *Schattilly v. Daugharty*, 656 F. App'x 123, 130 (6th Cir. 2016); *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015); *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir.1989); *see Dean*, 354 F.3d at 554.

Still, Nettles seems to challenge two investigative actions that are not protected by absolute immunity. First, Nettles alleges that Bruno pursued an investigation against him despite "a lack of credible evidence." (ECF No. 1, PageID.5.) Nettles states that the prior supervisor in his case "refused to prosecute" because she could not find credible evidence of child abuse and Bruno "pursued the case simply because" the police "wanted her to." (*Id.*) Because a social worker's decision to open or conduct an investigation is not protected by absolute immunity, Nettles can challenge Bruno's decision to investigate him. *See Achterhoff v. Selvaggio*, 886 F.2d 826, 830 (6th Cir. 1989).

Second, Nettles suggests that Bruno and Johnson had some role in fabricating the photograph of Nettles abusing his daughter. Nettles alleges that at an interview in January 2019, Bruno and Johnson told him that "there was a photo of" Nettles sexually abusing his daughter. (ECF No. 1, PageID.5.) However, the state police had not yet recovered this photograph. Indeed, the state police concluded their search weeks after the interview and found that none of

8

Nettles' items contained evidence of child abuse. (*Id.*) It was not until Skabardis resubmitted the CD that the photograph, which Bruno and Johnson knew of almost a month earlier, was found by authorities. (*Id.*) Because this conduct concerns investigative, not prosecutorial, conduct, Bruno and Johnson are not entitled to absolute immunity. *See Holloway*, 220 F.3d at 775.

### 3. Personal Involvement

To prevail on a § 1983 claim, a plaintiff must demonstrate that (1) the conduct about which he or she complains was committed by a person acting under color of state law and (2) that the conduct deprived him or her of a federal constitutional or statutory right. 42 U.S.C. § 1983. Additionally, a plaintiff must establish a "direct causal link" between the injury and the conduct of that defendant. *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872 (6th Cir. 1982) (citing *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976)). In other words, a plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *Id.* at 375; *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

Here, Nettles does not allege that that any defendant was personally involved in his false arrest or malicious prosecution, nor does he allege that any defendant was personally involved in a *Franks* violation. (*See* ECF No. 1, PageID.3, 5.) Indeed, as social workers, neither Bruno nor Johnson had a direct role in Nettles' investigation or criminal prosecution, nor does Nettles allege that either Defendant influenced his criminal prosecution or investigation in any way. (*Id.* at PageID.5.)

However, although Defendants were not personally involved in any of these actions, I suggest that these claims are better construed as conspiracy claims. *See Haines*, 404 U.S. at 520

9

(holding that *pro se* complaints should be liberally construed). Although § 1983 generally requires personal involvement, a defendant may still be held liable for any conduct a coconspirator takes in furtherance of the conspiracy, even if the defendant was not personally involved in that conduct.³ *Crowley v. Anderson Cty., Tenn.*, 783 F. App'x 556, 556 (6th Cir. 2019) (quoting *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 460 (6th Cir. 2011)). A conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn,* 658 F.3d 598, 602 (6th Cir. 2011) (internal quotation marks omitted) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To establish a conspiracy, a plaintiff "must show that (1) a 'single plan' existed, (2) [the defendant] 'shared in the general conspiratorial objective' to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) 'an overt act was committed in furtherance of the conspiracy that caused injury' to [the plaintiff]." *Id.* (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir.1985)); *see also Crowley*, 783 F. App'x at 561 ("[T]he defendant in question need not commit an overt act himself . . . .").

A defendant "need not have known all of the details of the illegal plan" to be held liable, nor need the conspirators have entered into an "[e]xpress agreement." *Hooks*, 658 F.3d at 602. "A conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *Crawford v. Geiger*, 996 F. Supp.2d 603, 618 (N.D. Ohio

---

³ A civil "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); *accord DeStefano v. Duncanson*, No. 08–cv–3419, 2011 WL 651452, at *4 (S.D.N.Y. Feb. 10, 2011) ("Having dismissed Plaintiff's § 1983 substantive claim, his related conspiracy claim must also be dismissed.") A coconspirator cannot be held liable just for entering into a conspiracy; instead, a coconspirator can only be held liable for unlawful conduct that furthers the conspiracy. *Smith*, 550 F.3d at 617.

2014) (internal quotation marks omitted) (quoting *United States v. Barger*, 931 F.2d 359, 369 n.6 (6th Cir. 1991)).

Here, Nettles alleges facts which, if accepted as true, could potentially establish a conspiracy. As discussed, Nettles alleges that both Bruno and Johnson told him at an interview that state police had uncovered the incriminating photograph although the photograph would not actually be discovered until about a month later, after Skabardis resubmitted a CD that had already been searched by the state police. (ECF No. 1, PageID.5.) Further, Nettles alleges that Bruno initially decided to investigate him, not because she uncovered evidence of child abuse, but because Bridgeport Township police officers requested her to. (*Id.*) From these allegations, a fact finder could infer that Skabardis, Bruno, and Johnson agreed to use the same fabricated evidence in their respective cases. *See Horen v. Bd. of Educ. of Toledo City School Dist.*, 594 F. Supp.2d 833, 842 ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."). This would establish that each individual agreed to a single plan with a common objective. *See Bazzi*, 685 F.3d at 602–03 (citing *United States v. Sinito*, 723 F.2d 1250, 1256–57 (6th Cir. 1983)). Additionally, because Skabardis took overt actions in furtherance of the conspiracy, Bruno and Johnson would be liable for any action taken in furtherance of the overall conspiratorial objective. *See id.* at 602.

Accordingly, I suggest that Nettles' *Franks*, false arrest, and malicious prosecution claims should be dismissed except to the extent that Nettles bases these claims on a civil conspiracy.

    **4.**    **Equal Protection**

Last, I suggest that the Court should dismiss all of Nettles' equal protection claims. Although Nettles does not explain which facts support his equal protection claims, he appears to allege that Bruno and Johnson discriminated against him based on his sex. (*See* ECF No. 1, PageID.5.) Indeed, Nettles' sex is the only classification he mentions in his complaint that would receive anything more than rational basis review. (*See id.*)

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Fundamentally, the Clause protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). To succeed on an equal protection claim, a plaintiff must first show that he or she was intentionally discriminated against by a government official. *Id.*; *Arsan v. Keller*, 784 F. App'x 900, 912 (6th Cir. 2019) ("[O]nly intentional, purposeful discrimination violates the equal protection clause . . . ."). But even where a plaintiff establishes discrimination, a government action that discriminates based on sex will still be upheld if it is substantially related to an important government interest. *United States v. Virginia*, 518 U.S. 515, 533 (1996); *Scarbrough*, 470 F.3d at 260.

For purposes of establishing discrimination under § 1983, a plaintiff "must prove the same elements required to establish a disparate treatment claim under Title VII . . . ." *James v. Hampton*, 592 F. App'x 449, 459–60 (6th Cir. 2015) (citing *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)). This means that at the pleading stage, a plaintiff need only "allege sufficient 'factual content' from which [a] court could 'draw the reasonable inference' of [sex] discrimination." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Davis v.*

12

*Prison Health Servs.*, 679 F.3d 433, 439–40 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002)). The complaint must "giv[e] rise to reasonably founded hope that the discovery process will reveal relevant evidence to support her claims." *Lindsay v. Yates*, 498 F.3d 434, 440 n.6 (6th Cir. 2007) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 559–60).

Nettles does not allege enough facts for this Court to reasonably infer that he was discriminated against because of his sex. Nettles alleges only that he is a man and that the social workers who sought termination of his parental rights were both women. (*See* ECF No. 1, PageID.1, 5.) However, courts routinely hold that one cannot reasonably infer discrimination from the mere fact that a member of one classification took an adverse action against a member of a different classification. *Milledge v. City of Hartford*, No. 3:19-cv-01104, 2020 WL 3510813, at *3 (D. Conn. June 29, 2020) ("[A] claim for discrimination is not made plausible simply because the person who has engaged in an adverse action is of a different race than the plaintiff."); *Langston v. UFCW Local 19*, 2019 WL 6839336, No. 3:19-cv-00841, at *3 (D. Conn. Dec. 16, 2019) (collecting cases). And for good reason: such a rule would implicate the Equal Protection Clause "every time" an individual "suffered an adverse . . . action at the hands of a" government official "of a different race, religion, sex, [or] national origin." *Coulton v. U. of Pennsylvania*, 237 F. App'x 741, 747–48 (3d Cir. 2007); *see also Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000). Without more, Nettles cannot plausibly allege sex discrimination. Accordingly, I suggest that Nettles' equal protection claims should be dismissed.

## III. CONCLUSION

For these reasons, I recommend that the Court **DISMISS** Plaintiff's complaint **IN PART**.

13

## IV. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 1, 2022
S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge